IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KELVIN O MILES,

    Plaintiff,

v.                                    CASE NO. 1:15-cv-41-WTH-GRJ

L. JACKSON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 49, Defendants' Motion for Summary Judgment.  Plaintiff has filed a response in opposition. (ECF No. 51.)  The motion is, therefore, ripe for review.  For the reasons explained below, it is respectfully recommended that the motion be granted.

## I.  INTRODUCTION

Plaintiff filed a Complaint under 42 U.S.C. § 1983 and state tort law, and he is proceeding pursuant to a Second Amended Complaint, ECF No. 41 (hereafter "Complaint").  According to the sworn allegations of the Complaint, on August 23, 2011, Plaintiff was an inmate at the Alachua County Jail.  Plaintiff had been in the infirmary and was being returned to a cell in E4 Pod by Sgt. Calvin, who was also the property officer, and Officer

Mizzell.  Plaintiff requested his property.  Calvin and Mizzell placed Plaintiff in his cell, removed his leg restraints and handcuffs, and Calvin retrieved the property.

Defendant Sgt. L. Jackson and other officers were in the pod conducting cell inspections.  After Calvin returned with the property, Plaintiff was placed back in leg restraints and handcuffs to review his property.  In the meantime, officers inspected his cell.  Calvin informed Plaintiff that some of his property could not be given to him, and Plaintiff told Calvin to return all of the property to the property room.  Sgt. Jackson ordered Plaintiff to step back into his cell, and Plaintiff alleges that he complied.

Plaintiff alleges that after he re-entered his cell Jackson ordered him to step back further into the cell.  "Out of nowhere", Jackson pushed Plaintiff further into the cell.  Plaintiff objected and Jackson jerked Plaintiff's arm.  "Out of physical reaction" and in an "attempt to free himself", Plaintiff jerked his arm in an upward motion away from Jackson.  Jackson and Defendant Officer S. Haberland grabbed Plaintiff and "slammed" him to the floor while another officer, Defendant B. Rinehart, rushed in and "dived into Plaintiff's midsection," landing blows with his fists and elbows.  Plaintiff

alleges that during the incident his back and left hip hit the bunk, causing him to suffer a bad jolt to his back and left hip.  Plaintiff alleges that he never resisted or posed a threat to the officers.  A nurse who was already on the pod entered the cell to check on Plaintiff, but he declined medical attention due to "being upset as to what had just" occurred.

The officers then lifted Plaintiff and dragged him out of the pod. Jackson intentionally "slammed" Plaintiff into a wall, dragged Plaintiff several more feet, and then "slammed" him to the floor while threatening to break Plaintiff's arm.

Plaintiff contends that Defendants, who are sued in their individual and official capacities, used excessive force against him in violation of his Eighth Amendment rights.  For relief, Plaintiff seeks compensatory and punitive damages totaling $1 million against each officer.  ECF No. 41.

Defendants contend that they are entitled to summary judgment because: (1) Plaintiff's factual allegations assert only individual capacity claims, and therefore official-capacity claims under section 1983 and state law are due to be dismissed; (2) Defendants are entitled to qualified immunity; (3) The force used by Defendants was applied in a good-faith effort to maintain or restore discipline; (4) The force used by Defendants was *de minimis*; and (5) Plaintiff's state tort claims are barred by the state

statute of limitations.  ECF No. 49.  In support of their motion, Defendants

have submitted: (1) Relevant excerpts from Plaintiff's deposition; (2)

Administrative remedy documents; (3) Plaintiff's medical records regarding

his injury claims; and (4) Relevant jail rules and regulations.  *Id*.

In his response in opposition to summary judgment, Plaintiff submits:

(1) Defendants' discovery responses; (2) ACJ reports for the incident; (3)

Medical records; (4) Administrative remedy documents; (5) Affidavit of

Prince E. Simmons; and (6) Plaintiff's affidavit, executed subsequent to his

deposition.  ECF No. 51.

## II.  SUMMARY OF EVIDENCE

The Defendants' summary judgment evidence may be summarized

as follows.  Plaintiff, an inmate committed to the custody of the DOC,

testified at his deposition that he was confined at the ACJ from June 2011

through April 2, 2012, awaiting trial on other charges.  Plaintiff was a

"special management" inmate because he had fought with another inmate

during a previous confinement.  Miles Depo. Excerpt (ECF No. 49-1) at 8-

10.  Plaintiff testified that on the date of the incident he became upset while

reviewing his property with Sgt. Calvin.  Defendants Jackson, Haberland,

and Rinehart told Plaintiff, who was in handcuffs and leg restraints, to go

back into his cell.  Plaintiff did so, standing at the end of the bunk closest to

the cell door.  Jackson was already inside the cell and ordered Plaintiff to step further into the cell, away from the cell door.  Jackson attempted to pull Plaintiff further into the cell, and Plaintiff pulled away from Jackson and told Jackson he needed to "leave out of the cell."  Plaintiff told Jackson "All you have to do is take the shackles off and step out of the cell."  Jackson responded "No, I want you to step further in the cell."  Plaintiff did not know why Jackson wanted him to get further in the cell.  He testified that he could not get further into the cell because Jackson was in the way.  *Id*. at 22-23, 39-40.

Jackson again attempted to pull Plaintiff further into the cell, but Plaintiff jerked his arm back.  Plaintiff pulled his arms and body backwards away from Jackson so that Jackson could not grab him.  Jackson then grabbed Plaintiff and "slammed" him to the bunk, with Haberland's assistance.  Plaintiff testified that his back hit the corner of the bunk, and his hip hit the floor hard.  Before he hit the floor, Rinehart dived in with his fist and elbows landing on Plaintiff's mid-section and neck.  Rinehart's weight caused Plaintiff's hip to hit the floor.  He felt "stinging pain" in his lower back.  Jackson put his thumb in Plaintiff's ear and Plaintiff testified that it was done in a way that Jackson wanted to hurt him.  Haberland restrained Plaintiff's legs.  *Id*. at 23-24, 40

Less than a minute later, the nurse came in the cell.  Plaintiff told the nurse he did not want medical attention.  *Id*. at 24.

The officers escorted Plaintiff from the pod.  Once out of the pod, Jackson "slammed" Plaintiff face-first into the wall, after which his face was "kind of swollen."  Plaintiff began cursing Jackson.  Jackson "snatched" Plaintiff from the wall and dragged him a few feet, then pushed Plaintiff to the floor.  Plaintiff testified that Jackson grabbed him up from the floor and threatened to break his arm and told him to get up.  Plaintiff testified that he did not resist and complied with Jackson's instructions, but Plaintiff was cursing Jackson.  *Id*. at 24.

Plaintiff testified that his left hip and the left side of his lower back were injured.  *Id.* at 47.  His jaw was a "little swollen" after Jackson pushed him into the wall.  *Id*. at 55.  Neither Rinehart nor Haberland assisted Jackson when he pushed Plaintiff into the wall.  *Id*. at 56.  After Jackson slung Plaintiff to the floor in the hall, Plaintiff felt pain in his chest and stomach but it was not like the pain from the fall in the cell.  *Id*. at 57.

Plaintiff testified that he sought medical attention at various institutions.  In December 2012, he was told that he had a problem with his lower back and hip.  *Id*. at 60.  Plaintiff received naproxen and ibuprofen.  *Id.* at 61.

Defendants' summary judgment evidence reflects that Plaintiff submitted three sick-call requests after the incident, all complaining of pain in his *right* hip and side.  Plaintiff was evaluated on September 16, 2011, for right hip and back pain and given Tylenol.  ECF No. 49-3.

Plaintiff filed an inmate grievance complaining that Jackson had become aggressive and slammed him to the floor in his cell.  He filed a second grievance complaining that Jackson and "another officer" slammed him to the floor in his cell.  In a third grievance, Plaintiff complained that Jackson and "several officers" slammed him to the floor in his cell.  There were no grievances describing the alleged incident in the hallway.  ECF No. 49-4, 49-5, 49-6.

Defendants also submit medical records of Plaintiff.  A May 2014 radiology report, prepared while Plaintiff was confined at Jefferson CI, reflects that Plaintiff was evaluated for complaints of back pain.  The back findings showed loss of normal lumbar lordosis and mild dextroscoliosis, consistent with muscular spasm; degenerative disc disease at T11-12 through L1-2 and L3-4 and L4-5, with narrowing of the intervertebral disc spaces and marginal osteophytes.  There was no spondylolisthesis and SI joints were normal.  An abdominal aortic aneurysm was also found.  The diagnostic impression was: 1.  Degenerative disc disease, with lumbar

spasm; and 2. Abdominal aortic aneurysm.  No further treatment was recommended.  ECF No. 49-7.

A March 2015 radiology study for complaints of left hip pain revealed no abnormal findings.  The diagnostic impression was "unremarkable left hip x-rays." *Id*.

An October 2015 study of Plaintiff's lumbar spine revealed normal alignment, no compression fractures, and no evidence of spondylolisthesis. Plaintiff had normal vertebral body heights, mild disc space narrowing at L3-4 through L5-S1, and minimal multilevel spondylitic changes.  There was mild lower lumbar facet arthropathy.  The diagnostic impression was "degenerative changes" with no evidence of a fracture.  *Id*.

Plaintiff's evidence submitted in opposition to the motion reflects the following.  Defendants verified in their answers to interrogatories that the statements made in the incident report relating to the use of force were true and correct.  ECF No. 51 at 28-38.  The incident report includes a narrative summary by Jackson.  In the report, Jackson states that Plaintiff was "upset" while reviewing his property with Calvin.  Jackson and Haberland escorted Plaintiff to his cell, where Plaintiff turned around and began cursing Calvin.  Jackson ordered Plaintiff to calm down but he continued to yell and curse.  Jackson attempted to take Plaintiff's right arm,

but Plaintiff raised his arms and yelled at Jackson not to put his hands on him. Jackson then took control of Plaintiff's left arm and placed him on the floor. Haberland held Plaintiff's feet. Calvin called the nurse to examine Plaintiff, but Plaintiff refused examination. Jackson and Rinehart escorted Plaintiff from the cell. After exiting the pod, Plaintiff began to pull away from the officers and yelled for them to take their hands off of him. Jackson again placed Plaintiff on the floor and Haberland held his legs. He ordered Plaintiff to stand and walk without resistance, and the officers assisted him to his feet. After placing Plaintiff inside a cell in F-pod for a calming-down period, Plaintiff repeatedly stated that he was going to get something sharp and stab Jackson. *Id*. at 41.

The report includes a "supervisor's note" and identifies the supervisor as Kenneth Cruse. The note observes that Plaintiff was a special management inmate and that Jackson did not know Plaintiff's intentions when he raised his hands toward Jackson, and therefore force was used to gain compliance. Force was used again to place Plaintiff on the floor on the way to F-pod when he tried to pull away from officers. The supervisor concluded that the amount of force used was within ACSO directives. *Id*

Haberland's statement on the incident report corroborates that Plaintiff was returned to his cell after reviewing his property with Calvin due

to his "agitated state".  The statement corroborates that while in the cell Plaintiff raised his arms in an aggressive manner and therefore he was placed on the floor.  Rinehart assisted by controlling Plaintiff's right arm while Haberland held his legs.  Plaintiff refused medical attention. Haberland states that Plaintiff attempted to pull away from the officers on the way to F-Pod and was placed on the floor.  After he stopped resisting, he was helped to his feet and escorted to F-Pod.  *Id*. at 42.

Rinehart's statement corroborates Jackson and Haberland's statements.  In particular, Rinehart also noted that Plaintiff raised his hands aggressively toward Jackson, and Jackson placed Plaintiff on the floor of his cell using an "armbar takedown".  After Jackson ordered that Plaintiff be escorted to F-Pod, Rinehart assisted by taking control of Plaintiff's right arm.  Plaintiff resisted during the escort by pulling away from staff, and was again placed on the floor by Jackson using an armbar takedown.  *Id*.

Notably, the incident report reflects that Plaintiff suffered no injuries. *Id*. at 43.  In support of his injury claim, Plaintiff submits the 2014 radiology report reflecting that he has degenerative disc disease and the physicians' orders prescribing ibuprofen for arthritis and naproxen for pain.  *Id*. at 54-55.

Included with Plaintiff's summary judgment evidence is a sworn

declaration dated August 27, 2011, allegedly by Prince Simmons, an ACJ

inmate.[1]  Simmons states that on the day of the incident he heard Jackson

order Plaintiff to go into his cell, and then Prince "heard what sounded like

a scuffle and someone being slammed to the floor."  Prince states that

Plaintiff was then "dragged" out of his cell by Jackson and two other

officers.  Simmons states that as Jackson removed Plaintiff from the pod,

he saw Jackson "slam [Plaintiff] into the wall," drag him a few feet, and

then slam him to the floor.  *Id*. at 64.

Plaintiff also submits his own affidavit, executed after his deposition

and after the summary judgment motion.  Plaintiff's affidavit essentially

restates his deposition testimony, except that he makes a new claim, which

he admits he deliberately left out of his deposition and other statements

regarding the incident.  Plaintiff alleges in the affidavit that as Jackson

reached for him, Plaintiff smelled "some type of alcoholic beverage on Sgt.

L. Jackson's breath and this is the reason I pulled away from Sgt. L.

Jackson."  Plaintiff states that he pulled away from Jackson believing he

had an "ulterior motive" or "bad intent" toward Plaintiff.  Plaintiff admits that

---

[1]Plaintiff filed a motion to compel discovery and for "spoiliation" sanctions relating to an alleged video of the incident.  Defendants response to the motion reflects that no such video exists.  Plaintiff's motion is being denied by separate order.

he evaded Jackson's grasp twice before Jackson put him on the floor.

ECF No. 51 at 69-73.

### III.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of

summary judgment is appropriate only when the Court is satisfied that

"there is no genuine dispute as to any material fact and the movant is

entitled to a judgment as a matter of law."  In applying this standard, the

Court must examine the pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits and other evidence in

the record "in the light most favorable to the nonmoving party." *Samples on*

*Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

"[W]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment."  *Morton v. Kirkwood*, 707 F.3d 1276, 1284

(11th  Cir. 2013) (internal quotations and citations omitted); *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat

summary judgment "there must be evidence on which the jury could

reasonably find for the plaintiff") "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." *Brown v.*

*City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  EXCESSIVE FORCE CLAIMS

The use of excessive physical force against a prisoner may

constitute cruel and unusual punishment in violation of the Eighth

Amendment.  *Hudson v. McMillan*, 503 U.S. 1, 4 (1992).  In determining

whether the force used was excessive, the inquiry is "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." *Id.* at 7; *Whitley v. Albers*, 475 U.S. 312,

319–21 (1986).

     To prevail on an excessive force claim against a prison official, an

inmate must establish both a subjective and objective component.  *Id.* at 8;

*Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006).  The subjective

component requires proof that the prison official acted "with a sufficiently

culpable state of mind." *Id.* The objective component requires proof that

"the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation." *Id.* "[N]ot 'every malevolent touch by a prison guard

gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37

(2010) (quoting *Hudson*, 503 U.S. at 9).  Generally, *de minimis* uses of

physical force and *de minimis* injuries do not give rise to a constitutional

claim. *Id.* at 38 (citing *Hudson*, 503 U.S. at 9–10).  "Eighth Amendment

claims based on *de minimis* uses of physical force by prison guards are not

cognizable unless they involve 'force that is repugnant to the conscience of

mankind.'" *Johnson*, 206 F. App'x at 884–85 (quoting *Hudson*, 503 U.S. at

9–10); *see Black v. Butler*, No. 2:12-CV-0633-LSC-PWG, 2013 WL
6085980, at *9 (N.D. Ala. Nov. 19, 2013) ("The slap by one officer and the
thump in the eye by another are *de minimus* intrusions that do not violate
the Eighth Amendment."); *Washington v. Wigington*, No. 1:12-CV-0637-
WSD-JFK, 2012 WL 3834844, at *5 (N.D. Ga. July 27, 2012) (holding that
although the prisoner was subdued, the officer's striking the prisoner in the
head three times without enough force to injure did not amount to
excessive force).

    The Court must consider five factors in determining whether force
was used sadistically and maliciously:

> (1) the extent of injury; (2) the need for application of force; (3)
> the relationship between that need and the amount of force
> used; (4) any efforts made to temper the severity of a forceful
> response; and (5) the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by the responsible
> officials on the basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and
citations omitted). "Prison guards may use force when necessary to restore
order and need not wait until disturbances reach dangerous proportions
before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir.
1990). "When we consider whether the jailers' use of force was excessive,
we must 'give a wide range of deference to prison officials acting to
preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307

(11th Cir. 1990) (quoting *Bennett*, 898 F.2d at 1533).  Even where an

inmate is not physically resisting and is instead refusing to follow orders,

the use of force may be necessary. *See Sanchez v. McCray*, 349 F. App'x

479, 482–83 (11th Cir. 2009) (use of force was necessary to gain control of

inmate and force him to comply with orders where inmate admitted that he

refused fo comply with orders to surrender his personal belongings);

*Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (inmate's refusal to

enter his cell when ordered to do so and resisting guard's attempt to take

his arm and lead him into the cell necessitated application of force by

pinning inmate against wall by his neck with a riot baton).

## V.  DISCUSSION

In this case, the undisputed summary judgment evidence supports a

conclusion that Plaintiff cannot establish that the force used against him

was excessive in violation of the Eighth Amendment.  Of particular

importance is Plaintiff's own admission, in his deposition and in his affidavit

submitted in response to the summary judgment motion, that he did not

move further into the cell when instructed to do so by Jackson and resisted

Jackson's efforts to pull him further into the cell by jerking his arm back

and pulling his arms and body backwards away from Jackson so that

Jackson could not grab him.   ECF NO. 51 at 70; Miles Depo., ECF No. 49-

1 at 22-23, 39-40.  Such refusal to comply with Jackson's order and overt efforts to evade Jackson's grasp were sufficient to necessitate the use of force to gain compliance, particularly in view of the fact that Plaintiff was already designated a special management inmate due to his violent history.  *See Sanchez*, 349 F. App'x at 482–83; *Brown*, 813 F.2d at 1189. It is simply not relevant that Plaintiff believed he smelled alcohol on Jackson's breath.

Moreover, the undisputed summary judgment evidence supports a conclusion that the force used during the incident was not applied sadistically or maliciously.  Assessing the evidence under the five factors outlined in *Campbell*, the Court finds as follows.  First, the extent of the injury weighs against finding that the force was sadistic or malicious.  The evidence reflects that while Plaintiff may have experienced pain during the incident there is no objective evidence that he suffered any injury as a consequence.  Plaintiff refused medical treatment immediately after the incident.  While Plaintiff subsequently sought treatment, his requests reflect that he complained of *right* hip and back pain while he claims in this case that his *left* hip and back were injured.  There is no evidence that he complained of swelling or pain in his jaw.  Plaintiff was examined for his complaints of right hip and back pain, and the only treatment deemed

necessary was Tylenol.  Plaintiff now points to radiology studies performed long after the incident, but those studies reflect a common diagnosis of degenerative disc disease and do not establish the existence of any injury to his back or hip stemming from the use of force.

The second factor, the need for application of force, is discussed above.  Plaintiff did not comply with Jackson's order and admits that he actively evaded Jackson's grasp.  It was therefore reasonable for Jackson to use force in response, and to remove Plaintiff from his cell to F-Pod for a cooling-off period.  Simmons' affidavit, even if true, sheds no light on what occurred in Plaintiff's cell or why.

The third factor concerns the relationship between the need and the amount of force used.  It is undisputed that Plaintiff was known to Defendants as a special management inmate, and given his active resistance in the cell it was reasonable and prudent for Jackson and the other officers to place Plaintiff on the floor of his cell to restrain him. Although Plaintiff characterizes the placement as an unnecessary "slamming", there is no objective evidence – such as an injury to Plaintiff – that supports a conclusion that Plaintiff was forcefully slammed to the floor in a way that was disproportionate to the need to restrain him.  In the same vein, even accepting as true Plaintiff's claim that it was unnecessary to

place him on the wall on the way to F-Pod, there is no evidence that supports Plaintiff's claim, or the claim in Simmons' affidavit, that the force used amounted to "slamming" him.  The summary judgment evidence supports the opposite conclusion:  Plaintiff never sought or received treatment for bruises, swelling, or other injuries that would necessarily accompany the forceful slamming alleged by Plaintiff.

The fourth factor concerns efforts to temper the severity of the force. Defendants' summary judgment evidence supports a conclusion that the officers used force only until such time as Plaintiff was restrained and stopped resisting.  Plaintiff conclusionally asserts otherwise, but the objective medical evidence does not support his claim that the Defendants overreacted to the threat by "slamming" him or continued to use unnecessary force after he became compliant.

Finally, the fifth factor concerns the extent of the threat to the safety of staff and inmates, as reasonably perceived by Defendants.  Again, Defendants knew that Plaintiff was a special management inmate due to his past record of violence.  In view of that knowledge, the Court concludes that Defendants responded reasonably to quell the threat posed by Plaintiff's noncompliance with Jackson's orders and active resistance when Jackson tried to restrain him.

In sum, even viewing the evidence in the light most favorable to Plaintiff, the undisputed summary judgment evidence establishes that Defendants applied force in an effort to restore discipline and obtain compliance with Jackson's orders, and that such force was not used sadistically or maliciously to harm Plaintiff.   Accordingly, no reasonable jury could conclude that Defendants utilized excessive force in violation of the Eighth Amendment during the incident underlying the Complaint.

The conclusion that Defendants are entitled to summary judgment on Plaintiff's excessive-force claim is also fatal to his claim that Defendants employed excessive force in their official capacities pursuant to a policy or custom.  Because the Court concludes that Defendants did not use excessive force against Plaintiff, such official-capacity claims cannot go forward.

In the same vein, it is unnecessary to address further whether Defendants are entitled to qualified immunity from Plaintiff's claims because the evidence supports a determination that no constitutional violation occurred.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Lastly, because Defendants are entitled to summary judgment on Plaintiff's federal constitutional claim the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claims.  *See*

*Mergens v. Dreyfoos*, 166 F.3d 1114, 119 (11th Cir. 1999) (decision to exercise supplemental jurisdiction over pendant state claims is discretionary).

## VI.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' motion for summary judgment, ECF No. 49, should be **GRANTED.**

**IN CHAMBERS** this 22nd  day of February 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th  Cir. Rule 3-1; 28 U.S.C. § 636.**